UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| GARY CHARLES SMITH, | ) | CASE NO. 4:07 CV 0366 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| THOMAS R. SNIEZEK, WARDEN, | ) | |
| | ) | |
| Defendant. | ) | |

Before the court is pro se plaintiff Gary Charles Smith's Motion for Temporary Restraining Order and/or Preliminary Injunction, With Incorporated Memorandum of Points and Authorities [Doc. 3], filed February 9, 2007 against Thomas R. Sniezek, Warden at the Federal Correctional Institution in Elkton, Ohio ("F.C.I. Elkton"). Mr. Smith, who is currently incarcerated at the F.C.I. Elkton, filed a petition in this court on February 9, 2007 for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, as well as mandamus and declaratory relief pursuant to 28 U.S.C. §§1361 and 2201, respectively. He now seeks a Temporary Restraining Order (TRO) from this court compelling the respondent to reinstate him to Cohort V of the Residential Drug Abuse Program, refer him for a six-month placement at a Community Corrections Center (CCC) and provide for his early release pursuant to 18 U.S.C. § 3621(e).

The court has reviewed the petition and memorandum in support of the motion. For

the reasons outlined below, Mr. Smith's application for a TRO is denied and his petition is dismissed in its entirety.

*Background*

Mr. Smith was indicted on charges of mail and credit card fraud in the United States District Court for the Middle District Court of North Carolina on September 30, 2002. He pleaded guilty to the charges and was sentenced to 76 months imprisonment on April 2, 2003. At sentencing, the judge recommended that petitioner be "housed to receive medical, substance abuse and mental health treatment and counseling." (Mot. at 4.)

Petitioner was subsequently incarcerated at the Federal Medical Center in Butner, North Carolina where he completed a 40 hour Drug Education Program on August 18, 2004. The following week, it was "determined" that he was eligible for participation in a 500- hour Residential Drug Abuse Program (RDAP) and "early release incentive available under 18 U.S.C. § 3621(e)." (Pet. at 4.).

On December 13, 2005, Mr. Smith was transferred to F.C.I. Elkton and housed in the dedicated RDAP living unit until he was admitted into a treatment program. Mr. Smith was eventually admitted into a RDAP on July 18, 2006 and began treatment as a member of Cohort V. During his first week in the treatment program, petitioner volunteered to serve on the Graduation Committee and as an inmate tutor. He states that the drug treatment specialist only described inmate tutors as "being 'responsible for providing tutoring on homework, treatment plans, etc.' no drug treatment staff member offered any instruction or guidance as to what tutors could or could not do in the course of their assignment." (Pet. at 5.)

2

Some time between August 10 and August 15, 2006,[1] Charles Boerio, another inmate participant in the RDAP, approached petitioner for assistance with the preparation of the oral disclosure he needed to present on August 30, 2006. Mr. Smith advised Mr. Boerio to prepare a draft of the presentation and that he would meet with him later "to refine the initial draft Boerio had composed." (Pet. at 6.) The two met again to discuss Mr. Boerio's draft, which included five handwritten pages. During an August 21, 2006 meeting between the two inmates, Mr. Smith states that Mr. Boerio was "concerned that his presentation be the best it could be, for he had previously been cited by Drug Treatment Specialist Lana N. Tullis with a formal warning when he submitted what Tullis deemed to be an inadequate self-disclosure. Because Boerio had received three prior formal warnings, he faced removal from the treatment program if he incurred another warning." (Pet. at 6-7.) It was under these circumstances that Mr. Smith alleges that he made revisions to the "syntax and vocabulary of Boerio's draft, but he did not alter the substance of the events Boerio had chosen to disclose to the RDAP community." (Pet. at 7.) Once a final version was settled on, petitioner typed a revised draft for Mr. Boerio to submit to Ms. Tullis before his formal disclosure.

On Friday, August 25, 2006, Mr. Boerio met with Ms. Tullis to prepare for his presentation. At that time, Ms. Tullis commented that the "prose Boerio had read to her appealed [sic] to have been prepared with the assistance of someone else." (Pet. at 8.) At that point, Mr. Boerio mentioned that he had sought the assistance of Mr. Smith through the Inmate Tutor Program. In response, Ms. Tullis "demanded that Boerio relinquish the initial and revised drafts of his

---

[1] In his petition, Mr. Smith states that on August 10, 2006 Mr. Boerio signed a sheet and expressed his interest in seeking tutoring assistance from him. In the affidavit attached to the petition, Mr. Boerio states that he approached petitioner on August 15, 2006 to express his interest.

3

presentation and ordered him to leave her office." (Pet. at 8.)

Messrs. Boerio, Smith and Zuvic were summoned to the Psychology Services Department on August 25, 2006 at 3:00 p.m.[2] At that time RDAP Coordinator Enoch-Morris notified the three that they were being expelled from the RDAP. Mr. Smith protested the staff's decision based on his belief that "he had done nothing which remotely approached cheating, and that he had been fully compliant with the program's objectives." (Pet. at 8.)

The day after he was expelled, petitioner filed informal resolution wherein he sought relief for what he considered an "unwarranted sanction." He pursued his administrative remedies through to the General Counsel on November 30, 2006. He "put the General Counsel on notice, as he had likewise done at the institution and regional office levels, that the appeal affects an early release decision, and that an extension for response at any stage of the administrative remedy response cannot be taken." (Pet. at 11.) Ten days later, he was notified that a response to his appeal would be issued on January 17, 2007. On the date he expected a response, however, the General Counsel "took an unauthorized extension until February 6, 2007, to respond to the appeal."[3] (Pet. at 11.)

*Temporary Restraining Order*

The Sixth Circuit has explained that "the purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had." Procter & Gamble Co. v. Bankers Trust Co., 78 F.3d 219, 227 (6th Cir.1996). In the context of prison management,

---

[2] Mr. Smith states that inmate Michael Zuvic was expelled for reasons unrelated to Mr. Smith and inmate Boerio.

[3] Although this was prior to the date he filed his petition in this court, Mr. Smith does not provide a copy of the General Counsel's response.

however, the status quo is to allow the Bureau of Prisons to manage its facilities and the prisoners incarcerated there. A restraining order would disturb the status quo and encroach on the BOP's discretion. See e.g. In the Matter of Providence Journal Company, 820 F.2d 1342, modified on reh'g by 820 F.2d 1354 (1st Cir.1986), cert. granted and dismissed on other grounds, United States v. Providence Journal Co., 485 U.S. 693 (1988)(effect of TRO on prior restraint). While these cases supports the exercise of sound discretion, it does not end the court's inquiry with regard to whether a TRO should issue.

This court must still review the following four factors to determine if a TRO is warranted in this context: (1) the likelihood of the plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction. In re DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir.1985); Mason County Medical Ass'n v. Knebel, 563 F.2d 256, 261 (6th Cir.1977). The test is a flexible one and the factors are not prerequisites to be met, but must be balanced. Id. at 1229. In balancing the four considerations applicable to temporary restraining order decisions, the court holds that equitable relief is not appropriate at this time.

*a.     Likelihood of Success*

With regard to the likelihood of success, Mr. Smith has not set forth a compelling argument. There is no dispute that 18 U.S.C. § 3621(e)(2)(B) provides that an inmate may be entitled to early release upon successful completion of a drug treatment program. Although Mr. Smith is not challenging his confinement, he is challenging his expulsion from the program, making him ineligible for early release. Because he is challenging the length of his confinement, the complaint is properly construed as a § 2241 habeas petition. See, e.g., Orr v. Hawk, 156 F.3d 651,

652 (6th Cir.1998). However, Mr. Smith's contention that he was wrongfully terminated from the drug program is meritless.

The thrust of Mr. Smith's argument centers around his belief that he was too severely sanctioned. He complains that he was not warned before being expelled from the RDAP and that the infraction for which he was charged did not warrant immediate expulsion. He asserts he is therefore entitled to be re-enrolled in the RDAP. At best, he is arguing that his due process rights were violated. To support a due process claim, however, there must be an infringement of a protected liberty interest. See Fristoe v. R.G. Thompson, 144 F.3d 627, 630 (10th Cir.1998). There is no liberty interest in a reduced sentence, and § 3621(e)(2)(B) does not afford such an interest. Id; see Sesi v. U.S. Bureau of Prisons, Nos. 99-2243, 99-2434, 2000 WL 1827950, at *2 (6th Cir. Dec. 7, 2000). Moreover, the Constitution does not itself afford a prisoner a liberty interest in a reduced sentence. Thus, a convicted person has no constitutional or inherent right to be conditionally released before the expiration of a valid sentence. See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979). To the extent therefore that Mr. Smith is attempting to raise a due process claim it is without merit.[4]

Mr. Smith also attempts to raise claims of retaliation in his TRO. This type of claim may not be brought under 28 U.S.C. § 2241, which is reserved for challenges to the execution of a sentence, such as the computation of parole or sentence credits, and may not be used to challenge the validity of a conviction or the conditions of confinement. See Cohen v. United States, 593 F.2d 766, 770-71 (6th Cir.1979). The Prison Litigation Reform Act requires prisoners bringing civil

---

[4] With regard to the respondent's "duty" to re-enroll Mr. Smith in a RDAP, he has failed to identify any legal obligation which would warrant an order from this court directing the warden to fulfill such a duty.

rights actions concerning prison conditions pursuant to 42 U.S.C. § 1983, or other federal law, to exhaust all available administrative remedies before suing in federal court. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 532(2002); Booth v. Churner, 532 U.S. 731, 741 (2001). The provisions of § 1997e(a) apply to both state and federal prisoners. Porter, 534 U.S. at 524; Lavista v. Beeler, 195 F.3d 254, 256 (6th Cir.1999). Federal prisoners raise grievances through the Bureau of Prisons' (BOP) Administrative Remedy Program. See 28 C.F.R. § 542.10, et seq. The issues Mr. Smith raised through the grievance process did not address his claims of retaliation and they may not be raised in a § 2241 petition.

b.      *Irreparable Injury*

Turning next to whether Mr. Smith has demonstrated that he will suffer irreparable injury if the injunction is denied, it is apparent that he will not. His claimed injury is, at best, a violation of his right to due process. Since no liberty interest exists to remain in a residential drug treatment program, Mr. Smith's constitutional rights are not in jeopardy. Rather, the facts suggest that the BOP has exercised its discretion to remove him from the program based on a violation of its policy. While the petitioner will be remain incarcerated longer than he anticipated before he was expelled from the RDAP, this fact does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). While it may be less desirable to complete his term in prison, it is not a cognizable injury for which injunctive relief is available.

c.      *Harm to Others*

Ignoring the relevant case law in this area, Mr. Smith simply states that no one will be harmed by this action. There is on authority, however for a sentencing court to order that a

7

convicted defendant be confined in a particular facility. See 18 U.S.C. § 3621(b); United States v. Restrepo, 999 F.2d 640, 644-45 (2d Cir.), cert. denied, 510 U.S. 954 (1993); United States v. Voda, 994 F.2d 149, 151-52 (5th Cir.1993). Therefore, allowing petitioner to be transferred immediately back into a RDAP under a TRO would contravene 18 U.S.C. § 3621(b) and undermine the BOP's authority as the ultimate arbiter with regard to prison management. See 18 U.S.C. § 3621.

d.  *Public Interest Served*

Mr. Smith does not address this last component and the court finds no basis to sustain the motion based on this factor.

## *Conclusion*

Upon due consideration of the fact that Mr. Smith has failed to raise any issue for which this court could grant habeas relief, his motion for temporary restraining order [Doc. 3] is DENIED and his petition for writ of habeas corpus is dismissed. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[5]

IT IS SO ORDERED.

                              /s/Dan Aaron Polster 2/27/07
                              DAN AARON POLSTER
                              UNITED STATES DISTRICT JUDGE

---

[5]  28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.